The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission, as well as the two additional depositions recently submitted. The appealing party has not shown good ground to reconsider the evidence, receive further evidence other than the two additional depositions, rehear the parties or their representatives, or amend the Opinion and Award, except with the deletion of Findings of Fact 18 through 26 and the addition of new Findings of Fact 18 through 23 and modification of the Conclusions of Law and Award.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in the I.C. Form 21 Agreement for Compensation, which was approved by the Commission on March 5, 1991, in the Pre-Trial Agreement, filed on October 7, 1994, and at the hearing as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties on December 13, 1990.
2. Defendant was a duly qualified self-insured, with Educator Benefits Services, Inc., as the adjusting agent.
3. Plaintiff's average weekly wage was $501.06, which yields a compensation rate of $334.04.
4. Plaintiff sustained an admittedly compensable injury on December 13, 1990. Plaintiff received temporary total disability compensation pursuant to the Form 21 at the rate of $334.04 from February 1, 1991.
5. The issues for determination are:
 a. Whether plaintiff is entitled to continuing temporary total disability benefits;
 b. Whether plaintiff is entitled to continued medical treatment from Dr. James D. Dillon;
 c. Whether plaintiff is entitled to benefits pursuant to N.C. GEN. STAT. § 97-30 or N.C. GEN. STAT. § 97-31;
 d. Whether plaintiff is capable of returning to work; and
 e. Whether plaintiff unjustifiably refused to return to work.
6. The parties agreed to stipulate to the following:
a. I.C. Form 18;
b. I.C. Form 19;
c. I.C. Form 21;
d. I.C. Form 22;
e. I.C. Form 33; and
 f. Records of Dr. John R. Leonard, III, Dr. James D. Dillon, Dr. Sanford Vernick, Pitt County Hospital, Duke University Medical Center, Central Rehabilitation Associates, Inc., and Comprehensive Rehabilitation Associates (eighty-nine pages).
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some minor modifications and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-nine year old married male who had completed the eleventh grade in school. Plaintiff is five feet nine inches tall and weighs two hundred and five pounds. He is right-hand dominant, and is able to read, write, and perform basic arithmetic.
2. In 1983, plaintiff underwent back surgery which was unrelated to this claim. The 1983 surgery did not prevent plaintiff from returning to work.
3. The plaintiff had eleven years of experience in the maintenance department with defendant. His primary duties involved performing heavy physical labor, including air conditioning repair, welding, and lawn care for the schools. Prior to this job, plaintiff worked as a logger.
4. Following the admittedly compensable injury on December 13, 1990, plaintiff was treated conservatively by Dr. James Dillon. However, after plaintiff failed to improve, an MRI was ordered, which showed a ruptured disc at L4-5. On or about February 19, 1991, Dr. Dillon performed a laminectomy at L4-5.
5. On or about October 13, 1992, defendant retained Comprehensive Rehabilitation Associates to perform medical management and vocational services for plaintiff's case; and Cynthia Jenkins, certified rehabilitation counselor was assigned to plaintiff's case.
6. On November 3, 1992, plaintiff underwent a functional capacity evaluation which found him capable of lifting seventeen to twenty-two pounds occasionally, with no repetitive lifting. The functional capacity evaluation found plaintiff capable of sedentary to light work.
7. On November 23, 1992, Dr. Dillon referred plaintiff to Dr. Sanford Vernick for pain management, rehabilitation and work hardening.
8. During the course of vocational efforts with Ms. Jenkins, plaintiff expressed his interest in working outdoors and in returning to the school system in order to keep his benefits.
9. Ms. Jenkins referred a telemarketing job to plaintiff which would permit him to sit and stand as needed, and which required no lifting. Plaintiff failed to follow-up on this opening.
10. Thereafter, the school system offered a position as a classroom monitor, which plaintiff refused. Plaintiff was next offered a position as a bus driver. He completed driver training and passed the test for the job. However, because he was unable to cease taking narcotic pain medication, the school system could not hire him.
11. The school system next offered plaintiff a light duty custodian job, as the custodian in the administrative offices was retiring. Ms. Jenkins met with Eunice Sharp, the retiring custodian, in order to assess the duties.
12. The basic duties of the custodian job required vacuuming the carpeted office area for the building's twenty employees, mopping a three foot by three foot kitchen, metering mail, dusting tables and chairs, cleaning two bathrooms, each with two toilets and two sinks, and using wheeled rolling carts to collect waste. The school system representative further offered that any areas which needed modification, the system would be amenable to making change, such as having employees throw away their own magazines or other heavy waste.
14. The job analysis was submitted and approved by Dr. Vernick on May 17, 1993, as being suitable work within plaintiff's restrictions. Dr. Dillon likewise approved the job for plaintiff.
15. In June of 1993, the light duty custodian job was offered to plaintiff by defendant.
16. On June 28, 1993, plaintiff reported to the administration building to begin the light duty custodian job. Plaintiff worked two hours per day for three days. On July 1, 1993, plaintiff worked six hours.
17. On July 8, 1993, plaintiff called Carlton Thornton, assistant superintendent, to advise that he could not continue in the light duty custodian job due to intense back pain. Plaintiff further related to Mr. Thornton that his pain was so severe that he had been unable to sleep more than two hours per night. In the opinion of the Commission, plaintiff justifiably refused the light duty custodial job offered by defendant due to the increased pain he experienced with the activities required by the job.
18. Plaintiff returned to Dr. Vernick on August 6, 1993, complaining of persistent low back pain. Dr. Vernick rated plaintiff with a five percent permanent functional impairment to his back and referred plaintiff to Dr. Dillon for further treatment.
19. On October 14, 1993, plaintiff returned to Dr. Dillon and voiced complaints of repetitive bending and lifting on the light duty custodial job, which produced intense lower back pain. Dr. Dillon prepared an out-of-work excuse which retroactively covered the period from July 2, 1993 through January 4, 1994.
20. Plaintiff reached maximum medical improvement as of October 20, 1994. As the result of the compensable injury on December 13, 1990, plaintiff has chronic intractable pain syndrome. He has permanent work restrictions of no heavy lifting, no prolonged sitting, standing or walking, no repetitive squatting or kneeling.
21. A functional capacity evaluation done in June 1995 showed that plaintiff is capable of performing part-time light duty work. He is unable to return to the manual labor which he was performing prior to the compensable injury.
22. In October 1995 plaintiff attended a training program in Norfolk for a transportation clerk position. However, due to the increased pain from the 50-mile commute each way, plaintiff was unable to continue the program.
23. As the result of the compensable injury and resulting chronic pain syndrome, plaintiff has been unable to return to his regular job with defendant. Defendant has not offered plaintiff any work which was within his capacity to earn wages. Subsequent to the compensable injury and resultant chronic pain, plaintiff has been incapacitated from work and incapable of earning wages in any employment.
* * * * * * * * * * *
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the admittedly compensable injury and the resulting chronic pain, plaintiff has been temporarily totally disabled from the date of the injury to the present, entitling him to compensation at the rate of $334.04 per week beginning February 1, 1991, and continuing until defendant obtains permission from the Industrial Commission to cease said payments. Defendant is entitled to a credit for temporary total disability compensation already paid to plaintiff and for any wages earned by plaintiff during this period. N.C. GEN. STAT. § 97-29.
2. If an injured employee refuses employment procured for him which is suitable to his capacity, he is not entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Commission such refusal is justified. Due to the increased pain he experienced, plaintiff's refusal to accept the employment offered to him by defendant on June 28, 1993, was justified. N.C. GEN. STAT. § 97-32.
3. Plaintiff is entitled to payment of all medical expenses by defendant as a result of his compensable injury and the resulting chronic pain, for so long as such treatment may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's period of disability. N.C. GEN. STAT. §97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission modifies the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff compensation at the rate of $334.04 per week beginning February 1, 1991, and continuing until defendant obtains permission from the Industrial Commission to cease said payments. Defendant shall be given a credit for any compensation already paid and for any wages earned by plaintiff during this period. Any amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved below.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the December 13, 1990, injury.
3. A reasonable attorney's fee in the amount of twenty-five percent of compensation awarded is hereby approved for plaintiff's counsel. This fee shall be deducted from the lump sum compensation awarded and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the compensation due plaintiff and paid directly to counsel.
4. Defendant shall pay the costs.
This the ___ day of January 1997.
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ________________ COY M. VANCE COMMISSIONER
LKM/bjp